1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

10

FORREST SCOTT HARMAN,

     *Petitioner*,

2:04-cv-00950-RCJ-GWF

11

12

vs.

ORDER

13

JAMES M. SCHOMIG, *et al.*,

14

     *Respondents*.

15

16       This habeas matter under 28 U.S.C. § 2254 comes before the Court for decision on

17 the merits.  Petitioner Forrest Scott Harman seeks to set aside his 2001 Nevada state court

18 conviction, pursuant to a guilty plea, for possession of a controlled substance, *to wit*,

19 methamphetamine, and his adjudication and sentencing as a habitual criminal.

20                            ***Governing Standard of Review***

21       The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

22 deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333

23 n. 7, 117 S.Ct. 2059, 2066 n.7,138 L.Ed.2d 481 (1997).  Under this deferential standard of

24 review, a federal court may not grant habeas relief merely on the basis that a state court

25 decision was incorrect or erroneous.  *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

26 2003).  Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if

27 the decision: (1) was either contrary to or involved an unreasonable application of clearly

28 established federal law as determined by the United States Supreme Court; or (2) was based

1   on an unreasonable determination of the facts in light of the evidence presented at the state

2   court proceeding.  *E.g.*, *Mitchell v. Esparza*, 124 S.Ct. 7,10 (2003).

3         A state court decision is "contrary to" law clearly established by the Supreme Court only

4   if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

5   if the decision confronts a set of facts that are materially indistinguishable from a Supreme

6   Court decision and nevertheless arrives at a different result.  *E.g., Mitchell,* 124 S.Ct. at 10.

7   A state court decision is not contrary to established federal law merely because it does not

8   cite the Supreme Court's opinions.  *Id.*  Indeed, the Supreme Court has held that a state court

9   need not even be aware of its precedents, so long as neither the reasoning nor the result of

10  its decision contradicts them.  *Id.*  Moreover, "[a] federal court may not overrule a state court

11  for simply holding a view different from its own, when the precedent from [the Supreme] Court

12  is, at best, ambiguous."  *Mitchell*, 124 S.Ct. at  11.  For, at bottom, a decision that does not

13  conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly

14  established federal law.

15        A state district court decision constitutes an "unreasonable application" of clearly

16  established federal law only if it is demonstrated that the state court's application of Supreme

17  Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."

18  *E.g., Mitchell*, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

19        To the extent that the state court's factual findings are challenged intrinsically based

20  upon evidence in the state court record, the "unreasonable determination of fact" clause of

21  Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d

22  943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly

23  deferential" to state court factual determinations.  *Id*.  The governing standard is not satisfied

24  by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.

25  Rather, the AEDPA requires substantially more deference:

26

27              . . . . [I]n  concluding that a state-court finding is unsupported by
             substantial evidence in the state-court record, it is not enough that
             we would reverse in similar circumstances if this were an appeal

28           from a district court decision. Rather, we must be convinced that

1                         an appellate panel, applying the normal standards of appellate
2                         review, could not reasonably conclude that the finding is
                       supported by the record.

3  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.  If

4  the state court factual findings withstand intrinsic review under this deferential standard, they

5  then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may

6  be overturned based on new evidence offered for the first time in federal court, if other

7  procedural prerequisites are met, only on clear and convincing proof.  393 F.3d at 972.

8         The petitioner bears the burden of proving by a preponderance of the evidence that

9  he is entitled to habeas relief.  *Davis*, 333 F.3d at 991.

10                                           ***Discussion***

11        ***Ground 1:  Alleged Failure to Exercise Discretion in Habitual Criminal Adjudication***

12         In Ground 1, petitioner contends that he was denied due process in violation of the

13  Fourteenth Amendment because the state district court allegedly failed to exercise discretion

14  when it adjudicated him a habitual criminal.

15         Both in the Supreme Court of Nevada and in this Court, Harman premises this claim

16  on the following statement by the state district court:

17                         All right.  The statements of your counsel are meaningful.
18                However, I think that they are addressed to the wrong branch of
              government.

19                         As a court, what I have to do is follow the law.  In the areas
20                that I do have discretion, that's one thing.

21                         But in the areas that I have to follow the law, that's a totally
              different thing.

22  *June 12, 2001, Sentencing Transcript*, at 16 (#7, Ex. 2).

23         Harman contends that the above-quoted statement demonstrates that the state district

24  court made the habitual criminal adjudication under an erroneous assumption that the

25  existence of the three prior felony convictions mandated a habitual criminal finding.  He urges:

26                      . . . .  This erroneous assumption controlled the district
27                court's judgment from its expression [petitioner quotes from the
              above-quoted passage] . . . through the pronouncement of said
28                judgment. . . . .

1

2

3

4

> The state district court did not understand its legal authority. The pronounced judgment did not indicate that the district court had discovered the error of its earlier expression. Said judgment was controlled by the erroneous assumption, that, the State proved the prior felony convictions, therefore, the judge must, and did, adjudicate Mr. Harman a "habitual criminal."

5 *Traverse* (#8), at 4-5.

6      The sentencing transcript establishes, however, that the above-quoted statement was

7 made by the state district court well *after* the court made its finding that petitioner should be

8 adjudicated a habitual criminal. The district court made the statement after the court heard

9 argument regarding the appropriate sentence to be imposed in light of the habitual criminal

10 adjudication that already had been made by the court. The district court made the statement

11 in response to an argument by Harman's counsel regarding the appropriate sentence, not the

12 habitual criminal adjudication.

13      The sentencing transcript reflects, in particular, the following.

14      The State sought to introduce four prior convictions, although a minimum of only three

15 convictions was required. The prosecutor stated that he was offering four "so I can argue that

16 and other factors involved with it." The state district court admitted only three of the

17 convictions, which were burglary convictions from 1984, 1987 and 1989.[1]

18      In its argument, the State pointed out that Harman had been adjudged a habitual

19 criminal on his last burglary conviction and had been sentenced to twelve years. Less than

20 a year after expiring this sentence, he had committed the drug offense that was the subject

21 of the plea. The State maintained that the short time between his release and his return to

22 criminal activity warranted a habitual criminal finding. At no point in its argument did the State

23 suggest that Harman should be automatically adjudged a habitual criminal simply because

24 there were three prior felony convictions.[2]

25      / / / /

26

27    [1]*June 12, 2001, Sentencing Transcript*, at 7-8 (#7, Ex. 2).

28    [2]*Id.*, at 7-9.

1  Defense counsel argued that while "obviously Mr. Harman, he meets the statutory
2  requirement for habitual criminality," the Court should not adjudicate him as a habitual
3  criminal.  Counsel contended that Harman's criminal behavior had de-escalated from the prior
4  property crimes to an otherwise victimless drug possession offense where Harman was the
5  only victim.  Counsel maintained that Harman was a habitual addict rather than a habitual
6  criminal, as his alleged addiction to alcohol, methamphetamine, and marijuana reflected
7  essentially self-destructive behavior rather than habitual criminality.[3]

8  The State responded that, while Harman had pled to simple possession, he had been
9  charged with possession with intent to sell.  The offense report indicated that Harman was
10  found not only with the methamphetamine in a marked baggie, but also with fifty other
11  baggies carrying the same emblem, a vitamin bottle, and associated tools.  The State argued
12  that Harman "may have changed his trade, but he is continuing to commit crime" after being
13  released from prison only eleven months before.  The State maintained that Harman was
14  continuing his criminal activities and that "[e]nough was enough."  At no point in its reply did
15  the State argue that Harman should be automatically adjudged a habitual criminal simply
16  because there were three prior felony convictions.[4]

17  The state district court, after hearing the foregoing extensive argument regarding the
18  particulars of Harman's current offense and prior criminal history, found as follows:

20  All right.  With the evidence presented to the court and the
   court looking at the prior record of Mr. Harman, the Court finds
21  that the State has carried its burden of proof in this matter and the
   court finds good reason to conclude and find that Mr. Harman is
   to be – or is found to be a habitual criminal as defined in NRS
22  207.010.

23  *June 12, 2001, Sentencing Transcript*, at 12.

24  The state judge then said: "Now for punishment."  Both counsel then gave extensive
25  argument regarding the appropriate sentence to be imposed following upon the habitual

27  [3]*June 12, 2001, Sentencing Transcript*, at 9-10.

28  [4]*Id.*, at 10-12.

-5-

1  criminal adjudication that the district court had made.  In the course of this argument, defense

2  counsel urged that a life sentence for a possession offense was not appropriate, despite its

3  current classification by the legislature as a Class A felony, because the Nevada legislature

4  had been reducing the offense level for drug offenses.  Counsel posited that "eventually we

5  will see that these cases will become citations and we will see an expansion of drug court

6  because people who involve themselves with drugs like Mr. Harman essentially take up the

7  space in prison that should be occupied by violent offenders."[5]

8        At the conclusion of the sentencing argument, the state district court formally adjudged

9  Harman guilty of felony offense possession of a controlled substance and a habitual criminal;

10  and the court gave Harman an opportunity to personally address the court prior to imposition

11  of sentence.  Harman's comments hearkened back to his lawyer's arguments.  The district

12  judge then made the statements relied upon by petitioner herein.   In context, these

13  statements included the following:

14
15              All right.  The statements of your counsel are meaningful.
           However, I think that they are addressed to the wrong branch of
16           government.

17              As a court, what I have to do is follow the law.  In the areas
           that I do have discretion, that's one thing.

18              But in the areas that I have to follow the law, that's a totally
19  different thing.

20                         . . . . .

21              . . . . And, as I said, I have to follow the law.  And the law
           dictates that the punishment provided – this is a Class A felony –
22           is life without the possibility of parole, life with the possibility
           of parole beginning with a minimum of ten years or life – excuse me,
23           a definite term of twenty-five years, eligibility after ten years are
           served.

24  *June 12, 2001, Sentencing Transcript*, at 16-17.  The court thereupon sentenced Harman to

25  life with the possibility of parole after ten years, less than the maximum possible sentence

26  available.  *Id.*

27  _____

28       [5]*June 12, 2001, Sentencing Transcript*, at 12-15.

1    Accordingly, in context, the comments relied upon by petitioner were directed to
2  defense counsel's arguments regarding the appropriate sentence, not to the factors governing
3  the habitual criminal adjudication, which already had been made.
4    On direct appeal, the Supreme Court of Nevada held as follows with regard to
5  Harman's claim that the state district court did not exercise its discretion:

6
7                . . . Harman contends that the district court failed to
         exercise discretion in adjudicating him as a habitual criminal at
         sentencing.   Harman argues that the district court failed to
8         expressly weigh the nature and gravity of the prior convictions
         and adjudicated him based solely on the existence of the prior
9         convictions without exercising its discretion.   Harman contends
         that the quickness with which the district court adjudicated him as
10        a habitual criminal warrants a new sentencing hearing.   We
         disagree.
11
12            The district court has broad discretion to dismiss a habitual
         criminal allegation.[FN1] Accordingly, the decision to adjudicate
13        an individual as a habitual criminal is not an automatic one.[FN2]
         The district court "may dismiss a habitual criminal allegation when
14        the prior convictions are stale or trivial or in other circumstances
         where a habitual criminal adjudication would not serve the
15        purpose of the statute or the interests of justice."[FN3]

16            This court recently explained that "Nevada law requires a
         sentencing court to exercise its discretion and weigh the
17        appropriate factors for and against the habitual criminal statute
         before adjudicating a person as a habitual criminal."[FN4]
18        Although it is easier for this court to determine whether the
         sentencing court exercised its discretion where the sentencing
19        court makes particularized findings and specifically addresses the
         nature and gravity of the prior convictions, this court has never
20        required such explicit findings.[FN5] Instead, we will look to the
         record as a whole to determine whether the district court
21        exercised its discretion or was under a misconception that
         habitual criminal adjudication is automatic upon proof of the prior
22        convictions.[FN6]

23            In this case, the district court heard argument regarding
         Harman's prior convictions, his criminal history in general, and the
24        nature of the instant offense.   After hearing the arguments of
         counsel, the district court judge stated:

25            All right.  With the evidence presented to the court
             and the court looking at the prior record of Mr.
26            Harman, the Court finds that the State has carried
             its burden of proof in this matter and the court finds
27            good reason to conclude and find that Mr. Harman
             is to be – or is found to be a habitual criminal as
28            defined in NRS 207.010.

-7-

1
2        Although the district court did not specifically address the nature
3    and gravity of the prior convictions before adjudicating Harman as
     a habitual criminal, we conclude that the record as a whole
     indicates that the district court understood its sentencing authority
4    and exercised its discretion in deciding to adjudicate Harman as
     a habitual criminal.

5        [FN1] <u>See</u> NRS 207.010(2).

6        [FN2] <u>Clark v. State</u>, 109 Nev. 426, 851 P.2d 426,
     427 (1993).
7
         [FN3] <u>Hughes v. State</u>, 116 Nev. 327, 331, 996
8    P.2d 890, 892 (2000).

9        [FN4] <u>Id.</u>, at 333, 996 P.2d at 893.

10       [FN5] <u>Id.</u>

11       [FN6] <u>Id.</u>, at 333, 996 P.2d at 893-94.

12   *March 7, 2002, Order of Affirmance*, at 1-3 (#7, Ex. 5).

13       The Nevada Supreme Court's rejection of this claim was neither contrary to nor an

14   unreasonable application of clearly established law as determined by the United States

15   Supreme Court.[6]

16       The Supreme Court's decision in *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct.

17   2227, 2229, 65 L.Ed.2d 175 (1980), establishes that state laws guaranteeing a defendant

18   procedural rights at sentencing may create a liberty interest protected against arbitrary

19   deprivation by the due process clause of the Fourteenth Amendment. Thus, when a state has

20   provided a specific method for determining whether a certain sentence shall be imposed, "'it

21   is not correct to say that the defendant's interest' in having that method adhered to 'is merely

22

23   _____

24       [6]Harman's argument on direct appeal was directed in the main to a claimed violation of state law
     based upon the district court's alleged failure to exercise its discretion. Harman did refer in the argument,
25   however, to the due process discussion in the Ninth Circuit's *Walker* decision, which is cited and discussed
     further below in the text. Respondents have not challenged exhaustion of the federal due process claim,
26   likely due to Harman's discussion of *Walker* on direct appeal. The Nevada Supreme Court did not explicitly
     discuss a federal due process claim or federal authorities. It is established law, however, that the state high
27   court need not discuss, or even be aware of, the applicable federal precedents to receive AEDPA deference,
     so long as neither the reasoning nor the result of the state court decision contradicts clearly established
28   federal law. This Court accordingly reviews the Nevada Supreme Court's implicit rejection of the parallel
     federal due process claim under the governing AEDPA standard.

1  a matter of state procedural law.'" *Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir.1993)

2  (citing *Hicks*).

3         In the present case, Harman relies upon the Ninth Circuit's pre-AEDPA application of

4  *Hicks* to a Nevada habitual criminal adjudication in *Walker v. Deeds*, 50 F.3d 670 (9th Cir.

5  1995).  In *Walker*, the Ninth Circuit sought to construe the Nevada Supreme Court's *Clark*

6  decision, which is cited above in the state high court's decision in this case on Harman's direct

7  appeal.  The *Walker* panel construed *Clark* as requiring Nevada state district courts to make

8  particularized findings expressly weighing the appropriate factors for and against habitual

9  criminal enhancement and expressly determining whether it was "just and proper" to adjudge

10 the defendant a habitual criminal based on the nature and gravity of the prior convictions.

11 Because such express findings and determinations were absent in *Walker*, the Ninth Circuit

12 held that the petitioner in that case had been denied due process under *Hicks* due to the state

13 district court's failure to follow state law sentencing procedure.  50 F.3d at 672-73.

14        Harman's reliance on *Walker* in this case is misplaced for two fundamental reasons.

15        First, the Supreme Court of Nevada rejected *Walker's* reading of *Clark* as to the

16 requirements of Nevada state law in *Hughes v. State*, which also was cited and relied upon

17 by the state high court in Harman's case.  As the Nevada Supreme Court made clear in

18 *Hughes*, contrary to the Ninth Circuit decision in *Walker*, Nevada state law does *not* require

19 sentencing courts to make express and particularized findings, *inter alia*, that it is just and

20 proper to adjudicate a defendant as a habitual criminal.  116 Nev. at 331, 996 P.2d at 892.

21 Nevada state law requires only that the "sentencing court ... exercise its discretion and weigh

22 the appropriate factors for and against the habitual criminal statute before adjudicating a

23 person as a habitual criminal."  *Id.*  Explicit particularized findings are not required.  *Id*.

24        The Supreme Court of Nevada is the final arbiter of Nevada state law.  The state high

25 court's rejection of a prior Ninth Circuit reading of Nevada state law is binding on both this

26 Court and the Ninth Circuit.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475,

27 480,116 L.Ed.2d 385 (1991)("it is not the province of a federal habeas court to reexamine

28 state court determinations on state law questions"); *Miller v. Gammie*, 335 F.3d 889, 892-93

(9th Cir. 2003)(*en banc*)(an intervening decision on controlling state law by a state court of last resort overrules clearly irreconcilable prior circuit precedent).  The Nevada Supreme Court's holding in this case that the state district court's findings complied with Nevada state procedural law is binding on federal habeas review and wholly undercuts Harman's due process claim.  Without a state law violation, there is no federal due process claim.

Second, the Nevada Supreme Court's factual determination based upon the record also wholly undercuts Harman's claim.  The state high court found that the record as a whole indicated that the district court understood its sentencing authority and exercised its discretion in deciding to adjudicate Harman as a habitual criminal.  The rule of deferential review of state court factual findings applies to factual findings by state appellate courts as fully as it does to findings by state trial courts.  *See,e.g., Little v. Crawford*, 449 F.3d 1075, 1077 n.1 (9th Cir. 2006).

Petitioner has not identified any evidence in the state court record that in truth contradicts the Nevada Supreme Court's factual determination.  Indeed, the state court record directly contradicts Harman's description of what transpired and fully supports the finding of the Supreme Court of Nevada.  According to Harman, the state district court indicated at the beginning of the proceeding that it had no discretion vis-à-vis the habitual offender adjudication and thereafter remained under this erroneous assumption when it later adjudicated Harman a habitual criminal.  What the transcript instead shows, however, is that the district court made the statement relied upon by Harman at the very *end* of the proceeding, well after making the habitual offender finding, and with regard to an entirely different issue.  The Nevada Supreme Court's factual finding accordingly is fully supported by the state court record and is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

Ground 1 therefore does not provide a basis for federal habeas relief.

/ / / /

/ / / /

/ / / /

-10-

***Ground 2: Ineffective Assistance for Failing to Challenge the Life Sentence as Exceeding the Enhancement Limits Allowed by the Prior Convictions***

In Ground 2, petitioner contends that he was denied effective assistance of trial and appellate counsel because counsel failed to challenge the imposition of a life sentence on the ground that the plea agreements on the three prior California convictions specifically and expressly limited the use of the convictions for enhancement to a maximum possible enhancement of sixteen years. He contends that such a challenge would have been successful because the Nevada state courts were required by Article IV, Section I of the Constitution to give full faith and credit to these alleged enhancement restrictions in the California plea agreements. He further contends that he was prejudiced by being improperly adjudicated a habitual criminal as well as by being sentenced to a life sentence exceeding the maximum sixteen year enhancement allegedly permitted by the plea agreements.

Harman premises this claim on the following acknowledgments in the form guilty plea agreements entered into respectively on the three prior convictions for burglary in the Santa Barbara, California County Superior Court.

In paragraph 14 in the 1984 form plea agreement in Case No. 151169, petitioner acknowledged:

> I understand that if I am pleading guilty or "no contest" to a serious felony offense or offenses, I could receive an additional five years in state prison if I were to be convicted of another serious felony offense in the future.

*Exhibit "D" to the State Court Petition* (#7, Ex. 6).

In paragraph 12 under "Consequences of Plea" in the 1987 form plea agreement in Case No. 166607, petitioner acknowledged:

> I understand that if I am convicted in the future of another felony offense that because of this plea today, I could be charged with additional enhancements in those proceedings which could add another 1 to 10 years in state prison.

*Exhibit "E" to the State Court Petition* (#7, Ex. 6). The lining through is by hand. It is not clear from the copy of the plea agreement tendered by the petitioner when the lining through was performed, but the point is not a material one to the Court's resolution of the claim.

-11-

1    In paragraph 12 under "Consequences of Plea" in the 1989 form plea agreement in

2  Case No. 175816, petitioner acknowledged:

3

4           I understand that if I am convicted in the future of another
            felony offense that because of this plea today, I could be charged

5           with additional enhancements in those proceedings which could
            add another 1 to 10 years in state prison.

6  *Exhibit "F" to the State Court Petition* (#7, Ex. 6).

7    Petitioner deduces an overall sixteen year maximum limit on any future enhancement

8  in any jurisdiction by combining the five year, one year, and ten year periods referenced

9  respectively in the three acknowledgments.  Petitioner did not present a copy of a California

10  state court order or judgment stating that any such conviction, either singly or together with

11  other conviction, could not be used, in California or any other jurisdiction, to impose a habitual

12  criminal enhancement sentence in excess of sixteen years or any other determinate amount.

13  The abstracts of judgment submitted reflected no such restriction.

14    The Supreme Court of Nevada rejected this ineffective assistance claim on the

15  following grounds:

16           . . . Harman claimed that trial counsel was ineffective for
            failing to argue that Harman's prior convictions were insufficient

17           to support a life sentence.  To this end, Harman asserted that his
            California plea agreements limited the enhancements that he

18           could receive for subsequent felony convictions, and argued that
            the district court was required to give full faith and credit to these

19           limitations.  We note that in his signed guilty plea agreement,
            Harman acknowledged that the State was free to seek habitual

20           criminal treatment and that he might be imprisoned for "life with
            the possibility of parole beginning after ten years have been

21           served."  Based on this acknowledgment, we conclude that
            Harman failed to show a reasonable probability that he wound not

22           have pleaded guilty and would have insisted on going to trial.
            Therefore, Harman failed to demonstrate that counsel was

23           ineffective on this issue.[FN5]

24           [FN5] To the extent that Harman also claimed
            ineffective assistance of appellate counsel, we

25           conclude that he failed to demonstrate that this
            claim "would have a reasonable probability of

26           success on appeal."  Kirksey [v. State, 112 Nev.
            980, 998, 923 P.2d 1102, 1113 (1996)(applying the

27           *Strickland* standard)].

28  *May 28, 2004, Order of Affirmance*, at 3 & n.5 (#7, Ex. 11).

-12-

1   The Nevada Supreme Court's rejection of this claim was neither contrary to nor an

2   unreasonable application of clearly established law as determined by the United States

3   Supreme Court.

4   On a claim for ineffective assistance of counsel, the petitioner must satisfy the two-

5   pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

6   (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard

7   of reasonableness; and (2) counsel's defective performance resulted in actual prejudice.

8   On the performance prong, the question is not what counsel might have done

9   differently but rather is whether counsel's decisions were reasonable from counsel's

10   perspective at the time. In this regard, the reviewing court starts from a strong presumption

11   that counsel's conduct fell within the wide range of reasonable conduct. *E.g., Beardslee v.*

12   *Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

13   On the prejudice prong, the petitioner must demonstrate a reasonable probability that,

14   but for counsel's unprofessional errors, the result of the proceeding would have been

15   different. *E.g., Beardslee*, *supra.* Application of this general principle to the specific context

16   of a guilty plea leads to the requirement that the petitioner "must show that there is a

17   reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

18   would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370,

19   88 L.Ed.2d 203 (1985).

20   When evaluating claims of ineffective assistance of appellate counsel, the performance

21   and prejudice prongs partially overlap. *E.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th

22   Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate

23   advocacy requires weeding out weaker issues with no likelihood of success. The failure to

24   present a weak issue on appeal neither falls below an objective standard of competence nor

25   causes prejudice to the client for the same reason – because the omitted issue has little or

26   no likelihood of success on appeal. *Id.*

27   In this case, the Nevada Supreme Court's rejection of the ineffective assistance claim

28   in Ground 2 was neither contrary to nor an unreasonable application of *Strickland*. The state

-13-

high court's rejection of the allegation of ineffective assistance of appellate counsel in particular signified a determination that Harman had failed to demonstrate a reasonable probability that the underlying full faith and credit objection had sufficient merit to change the outcome of the proceeding.  This determination logically and necessarily extended equally to the post-plea sentencing proceedings in the state district court as it did to the proceedings on appeal.

Such a determination was not objectively unreasonable.  The plea agreement language relied upon by Harman appears on its face to be no more than an acknowledgment of the potential enhancement consequences under California law from each conviction standing alone.  The form acknowledgment does not speak to Harman's potential habitual criminal enhancement exposure if he instead were convicted multiple additional times, and the language does not purport to speak to Harman's potential enhancement exposure in other jurisdictions.  That is, the acknowledgment speaks only to the possible enhancement effect of the one conviction, standing alone, under the law in that jurisdiction.  More to the point, the acknowledgments in the plea agreements do not at all, as Harman contends, specifically and expressly limit the use of the convictions for enhancement.  Moreover, Harman has not shown that the acknowledgments were included in any language in a California decree or judgment that purported to expressly place limits on an enhancement penalty that might be imposed in a later case, much less one in another jurisdiction.  The factual predicate for Harman's full faith and credit objection therefore is a highly dubious one.

Nor has Harman come forward with apposite case authority establishing the legal predicate for his full faith and credit objection.  Harman has not come forward with apposite authority – existing at the relevant time in and after 2001 or now – applying the Full Faith and Credit Clause to limit a state's use of a judgment of conviction from a different state in applying its own recidivist-enhancement statute.  He in particular has not cited any case authority holding that acknowledgments such as those found in his 1984, 1987, and 1989 plea agreements created a limitation enforceable under the Full Faith and Credit Clause on the enhancement sentence that a court in another jurisdiction could impose.

-14-

1    The Nevada Supreme Court's rejection of the ineffective assistance of counsel claim

2  therefore was neither contrary to nor an unreasonable application of *Strickland*, as Harman

3  failed to demonstrate that there was a reasonable probability that a full faith and credit

4  objection, if raised, would have changed the outcome of either the sentencing proceedings

5  or the appeal.

6    Ground 2 therefore does not provide a basis for federal habeas relief.[7]

7

8  **Ground 3: Ineffective Assistance for Failing to Challenge Lack of Jury Determination of Facts on Habitual Criminal Adjudication**

9    In Ground 3, petitioner contends that he was denied effective assistance of trial and

10  appellate counsel because counsel failed to challenge the absence of a jury determination

11  of the facts on the habitual criminal adjudication.

12    The Supreme Court of Nevada rejected the corresponding ineffective assistance claim

13  in that court on the following grounds:

14    . . . Harman claimed that trial counsel was ineffective for
    failing to challenge the district court's usurpation of his right to a
15    jury determination of the facts used to adjudicate him a habitual
    criminal.  We have previously held that "[o]ne facing adjudication
16    as a habitual criminal and the consequent life imprisonment is not
    entitled to a trial by jury."[FN6] Therefore, Harman failed to
17    demonstrate that counsel was ineffective on this issue.

18    [FN6] Clark v. State, 109 Nev. 426, 428, 851 P.2d
    426, 427 (1993)(citing Howard v. State, 83 Nev. 53,
19    422 P.21d 548 (1967)).

20  *May 28, 2004, Order of Affirmance*, at 3 & n.6 (#7, Ex. 11).

21    The Nevada Supreme Court's rejection of the claim was neither contrary to nor an

22  unreasonable application of *Strickland*.

23    / / / /

24

25    [7]Petitioner initially claimed also that the state district court erroneously relied upon a fourth conviction

26  that had been excluded from consideration.  In his traverse, petitioner appears to abandon any claim under
    Ground 2 other than that discussed in the text.  The claim regarding the fourth conviction in any event is

27  without merit.  The reference to the fourth conviction in the original judgment was a clerical error that later
    was corrected.  The transcript reflects that the state district judge considered only the three California

28  burglary convictions.

-15-

1    In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350

2 (1998), the United States Supreme Court held that a sentencing court may enhance a

3 sentence on the basis of prior convictions even if the fact of those convictions was not found

4 by a jury beyond a reasonable doubt.  Harman notes, correctly, that the Supreme Court called

5 the continuing vitality of *Almendarez-Torres* into serious question only two years later in

6 *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  While this

7 is true, it also remains true that *Apprendi* did not overrule *Almendarez-Torres*.  Parties

8 repeatedly have requested that the Ninth Circuit disregard *Almendarez-Torres* based upon

9 *Apprendi* and other subsequent Supreme Court pronouncements.  The Court of Appeals

10 repeatedly has rejected these entreaties, holding in 2000, 2001, 2005, and again recently in

11 2007, that *Almendarez-Torres* remains binding law until explicitly overruled by the Supreme

12 Court.  *See United States v. Martinez-Rodriguez*, ___ F.3d ___, 2007 WL 10031 (9th Cir., Jan.

13 3, 2007)(under headnote [3]); *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir.

14 2005); *United States v. Reyes-Pacheco*, 248 F.3d 942, 944-45 (9th Cir. 2001); *United States*

15 *v. Pacheco-Zepeda*, 234 F.3d 411, 413-14 (9th Cir. 2000).

16    In light of the above Ninth Circuit precedent, it was not objectively unreasonable for the

17 Supreme Court of Nevada to reject a claim alleging that trial and appellate counsel were

18 ineffective for failing to challenge the habitual offender adjudication for lack of a factual finding

19 by a jury.  An implicit conclusion that *Almendarez-Torres* remained good law and that Harman

20 therefore could not demonstrate prejudice from a failure to raise the challenge at trial or on

21 appeal was not objectively unreasonable.  Harman nonetheless urges that counsel should

22 have challenged the lack of a jury factual determination as to unspecified facts relied upon

23 in the habitual criminal adjudication other than the convictions themselves, and he seeks to

24 distinguish *Almendarez-Torres* on this basis.  However, Harman has not come forward with

25 any apposite authority holding that a jury determination is required in a habitual criminal

26 adjudication as to facts other than the convictions themselves.  He therefore cannot establish

27 prejudice from the failure of counsel to pursue this distinction.

28    Ground 3 therefore does not provide a basis for federal habeas relief.

1    IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be

2  DENIED on the merits and that the petition shall be DISMISSED with prejudice.  The Clerk

3  of Court shall enter final judgment accordingly in favor of respondents and against petitioner.[8]

4          DATED this 7th day of February, 2007.

5

6

7                                          _____
                                              ROBERT C. JONES
8                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21    [8]Petitioner contends in his traverse that respondents failed to file all state court record materials
22  required by Rule 5 of the Rules Governing Section 2254 Cases.  He requests that the Court order
    respondents to file his opening brief, appendix, and motion to file proper person briefs and papers from his
23  appeal in the state post-conviction proceedings.  While respondents failed to file all state court appellate
    briefs as required by Rule 5(d)(1), it nonetheless remains true that all state court record materials necessary
24  to the resolution of the petition in this matter are on file.  Petitioner points out that respondents referred in
    their answer to Exhibit Nos. 12, 13 and 14 but filed only eleven exhibits.  Petitioner acknowledges, however,
25  that all of the materials referred to in the omitted exhibits are in the record as exhibits D, E and F to his state
    post-conviction petition, which is filed in its entirety as Exhibit No. 6 to the answer.  All materials and
26  transcripts relevant to the issues presented are of record in this matter, and the respondents failure to fully
    comply with Rule 5(d) did not affect petitioner's substantial rights herein.  *Cf.* Fed. R. Civ. Pro. 61 ("The court
27  at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect
    the substantial rights of the parties.").  The Court trusts that respondents' counsel in future will comply fully
28  with all requirements of Rule 5.

-17-